UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:17cv62364

ANITA JAIRAM,

      Plaintiff,

v.

AMERIFINANCIAL SOLUTIONS, LLC,

      Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff ANITA JAIRAM ("Plaintiff"), by and through undersigned counsel, seeks redress for the illegal practices of Defendant AMERIFINANCIAL SOLUTIONS, LLC ("Defendant"), to wit, for Defendant's violations of 15 U.S.C §1692, the Fair Debt Collection Practices Act, and Florida Statute §559.551, the Florida Consumer Collection Practices Act, and in support thereof, Plaintiff states the following:

**NATURE OF ACTION**

**I.      *THE FAIR DEBT COLLECTION PRACTICES ACT***

1.      The Fair Debt Collection Practices Act (the "FDCPA") is a series of statutes which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. §1692. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure [sic] that debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).

2.      In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. §1692(b).

3.      The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collection and provides for specific consumer rights. 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

4.      Section 1692d of the FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The six subsections of §1692d set forth a non-exhaustive list of practices that fall within this ban. 15 U.S.C. §1692d.

5.      Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of §1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to:

> (2) The false representation of [] (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation

which may be lawfully received by any debt collector for the
collection of a debt.
…
(10) The use of any false representation or deceptive means to
collect or attempt to collect any debt or to obtain information
concerning a consumer.

15 U.S.C. §1692e.

6.     Section 1692f of the FDCPA states "[a] debt collector may not use unfair or

unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. *See* LeBlanc

v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010) ("[a]n act or practice is deceptive

or unfair if it has the tendency or capacity to deceive."). The eight subsections of §1692f set forth

a non-exhaustive list of practices that fall within this ban, including, but not limited to:

(1) The collection of any amount (including any interest, fee, charge,
or expense incidental to the principal obligation) unless such amount
is expressly authorized by the agreement creating the debt or
permitted by law.
…
(8) Using any language or symbol, other than the debt collector's
address, on any envelope when communicating with a consumer by
use of the mails or by telegram, except that a debt collector may use
his business name if such name does not indicate that he is in the
debt collection business.

15 U.S.C. §1692f.

7.     Section 1692g of the FDCPA requires debt collectors to make certain disclosures,

and/or provide consumers with certain information, depending on the circumstances. The rights

and obligations established by section 1692g were considered by the Senate to be a "significant

feature" of the Act. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4. In particular, §1692g mandates,

inter alia, that:

Within five days after the initial communication with a consumer in
connection with the collection of any debt, a debt collector shall,
unless the following information is contained in the initial

communication or the consumer has paid the debt, send the consumer a written notice containing --

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g.

## II.   THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

8.     The Florida Consumer Collection Practices Act (the "FCCPA") is "a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." Harris v. Beneficial Finance Company of Jacksonville, 338 So. 2d 196, 200-201 (Fla 1976). In 1993, the FCCPA was enacted to complement the FDCPA, and, as of present-day, the FCCPA continues to effectuate this goal by otherwise furthering the protections and prohibitions of the FDCPA. See Bianchi v. Bronson & Migliaccio, LLP, 2011 WL 379115 (S.D. Fla. Feb. 2, 2011) (stating, "[t]he Florida legislature through the FCCPA expresses its intent that the FCCPA be read as providing regulations that complement the FDCPA. Specifically, the

FCCPA notes that any discrepancy between the two acts should be construed as to provide the consumer (or debtor) the greatest protection." (citations omitted)).

9.      Section 559.72, Fla. Stat., of the FCCPA contains nineteen subsections and otherwise codifies an extensive list of acts and/or omissions that the FDCPA does not explicitly prohibit. Accordingly, in collecting consumer debts, pursuant to the FCCPA no person shall: "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. §559.72(9).

10.     The FCCPA governs the collection of debts with more scrutiny and specificity than that of the FDCPA, whereby, in its totality, not only does the FCCPA codify additional conduct as explicitly unlawful – but most critically – the FCCPA applies to individuals and/or entities not otherwise regulated by the FDCPA. *See* In re Hathcock, 437 B.R. 696, 704 (Bankr. M.D. Fla. 2010) ("[u]nlike the FDCPA, the [FCCPA] applies not only to debt collectors but to *any persons collecting a consumer debt*." (emphasis added)); *See, e.g.*, Heard v. Mathis, 344 So. 2d 651, 654 (Fla. 1st DCA 1977) (holding the FCCPA applied to "a private individual making an oral, non-interest bearing loan to a friend."); Schauer v. General Motors Acceptance Corp.*,* 819 So. 2d 809, 812 n. 1 (Fla. 4th DCA 2002) (creditors are not exempt from FCCPA liability, whether it be direct or vicarious).

11.     As set forth in more detail below, Defendant violated the aforementioned portions the FDCPA and FCCPA. Plaintiff now seeks damages and/or injunctive relief for the same.

## JURISDICTION AND VENUE

12.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C §1331, and 28 U.S.C §1337.

13.     Supplemental jurisdiction exists for the FCCPA claims under to 28 U.S.C. §1367.

14.     Venue in this District is proper because Plaintiff resides here, Defendant transacts business here, and the complained conduct of Defendant occurred here.

## PARTIES

15.     Plaintiff is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

16.     Defendant is a North Carolina corporation, with its principal place of business located in Owings Mills, MD.

17.     Defendant engages in interstate commerce by regularly using telephone and mail in a business whose principal purpose is the collection of debts.

18.     At all times material hereto, Defendant was acting as a debt collector in respect to the collection of Plaintiff's debts.

19.     At all times material hereto, Defendant has been a corporation subject to the FCCPA. *See*, *e.g.,* <u>Cook v. Blazer Fin. Services, Inc.</u>, 332 So. 2d 677, 679 (Fla. 1st Dist. App. 1976) (citing Fla. Stat. §1.01(3)).

## FACTUAL ALLEGATIONS

20.     The debt at issue (the "Consumer Debt") is a financial obligation Plaintiff incurred primarily for personal, family, or household purposes. In particular, the Consumer Debt represents an allegedly outstanding amount Plaintiff owes the original creditor, Phoenix Emergency Med Broward LLC (the "Creditor"), for the Creditor's provision of medical services for Plaintiff's own personal benefit, as well as the benefit of Plaintiff's family and household.

21.     The Consumer Debt is a "debt" governed by the FDCPA and FCCPA. *See* 15 U.S.C §1692a(5); Fla. Stat. §559.55(6).

22.     Plaintiff is a "consumer" within the meaning of the FDCPA. *See* 15 U.S.C §1692a(3).

23.     Defendant is a "debt collector" as defined by the FDCPA and FCCPA. *See* 15 U.S.C §1692a(6); Fla. Stat. §559.55(7).

24.     On a date better known by Defendant, Defendant began attempting collect the Consumer Debts from Plaintiff.

25.     On or about October 4, 2017, Defendant sent a collection letter to Plaintiff (the "Collection Letter") in an attempt to collect the Consumer Debt. A copy of the Collection Letter is attached hereto as Exhibit "A."

26.     On information and belief, the Collection Letter was the first communication Plaintiff had received from Defendant with respect to the Consumer Debt.

27.     The Collection Letter constitutes "collection activity" within the meaning of §559.715 of the FCCPA.

28.     The Collection Letter displays a symbol, particularly QR (quick response) code, visible through the glassine portion of the envelope that when scanned by anyone with a smart phone reveals information individually and exclusively pertaining to plaintiff.

29.     On or about, October 16, 2017 Plaintiff called Defendant to dispute the Consumer Debt because Plaintiff is under the belief that she already paid the amount being sought for collection in the Collection Letter.

30.     When asked as to the procedure on disputing the debt in light of Plaintiff's contention, Defendant's agent stated that "she (Plaintiff) *could not* dispute the debt because she could not remember who she previously paid the debt to" and that "she would have to look for the payment that she made and mail in a proof of payment to dispute the debt" and that "she can't

dispute the debt unless she has a bank record of payment." Furthermore, Defendant's agent stated that in order to dispute the debt, it would need to be put it in writing and sent to Defendant's office. As will be discussed below, Defendant, through its agent has violated several provisions of the FDCPA by misrepresenting and overshadowing Plaintiff's rights under the FDCPA.

## VIOLATION OF THE FDCPA AND FCCPA

### I.     RELATIONSHIP BETWEEN THE FDCPA & FCCPA

31.     In Florida, consumer debt collection practices are regulated by both the FCCPA and the FDCPA. "Both acts generally apply to the same types of conduct, and Florida courts must give great weight to federal interpretations of the FDCPA when interpreting and applying the FDCPA." Read v. MFP, Inc., 85 So.3d 1151, 1153 (Fla. 2nd DCA 2012). "Congress enacted the FDCPA after noting abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." (internal quotations omitted). Brown v. Card Serv. Ctr., 464 F.3d 450 (3rd Cir. 2006). Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. at 453 (quoting 15 U.S.C. §1692(a). Because the FDCPA is a remedial statute, "we construe its language broadly, as to affect its purpose." Id. The FDCPA restricts the time and places a debt collector may contact a consumer and limits third party contacts. These restrictions, along with others, protect the consumer's right to privacy and the security of the consumer's relationship with third parties, including attorneys, co-workers, and employers. This was considered an "extremely important protection." S. Rep. No. 382, 95th Cong., 1st Sess. 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

32.     Notably, "[t]he FDCPA establishes a strict liability standard; a consumer need not show an intentional violation of the Act by a debt collector to be entitled to damages." Drossin v.

Nat'l Action Fin. Servs., 641 F.Supp.2d 1314 (S.D. Fla. 2009). "A single violation of the Act is sufficient to subject a debt collector to liability under the Act." Id. at 1316. Similarly, the FCCPA "is to be construed in a manner that is protective of the consumer." Laughlin v. Household Bank, LTD., 969 So.2d 509, 513 (Fla. 1st DCA 2007). In fact, the FCCPA "further defined and protected an individual's right of privacy" in addition to the protections of the FDCPA. Id. at 512. Importantly, the FCCPA is "in addition to the requirements and regulations of the [FDCPA]. In the event of any inconsistency between any provision of [the FCCPA] and the [FDCPA], the provision which is more protective of the consumer or debtor shall prevail. Fla. Stat. §559.552. Finally, in ultimately asserting a consumer's civil remedies under the FCCPA, "due consideration and great weight shall be given to the interpretations of… federal counts related to the [FDCPA]." Fla. Stat., §559.77(5).

## II.      THE LEAST SOPHISTICATED CONSUMER STANDARD

33.      The Eleventh Circuit has adopted the "least sophisticated consumer" standard in reviewing alleged violations of the FDCPA. See Beeders v. Gulf Coast Collection Bureau, 796 F.Supp.2d 1335, 1338; Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). The purpose of the least-sophisticated consumer standard is to ensure the protection of the gullible as well as the shrewd. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. Fla. 2010). "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Jeter v. Credit Bureau, Inc., 760 F.2d at 1168.

34.      "Literally, the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. Even assuming that he would be willing to do so, such a

consumer would likely not be able to read a collection notice with care, let alone interpret it in a reasonable fashion." Gammon v. GC Servs., 27 F.3d 1254, 1257 (7th Cir. 1994) (emphasis added).

35.    "A court applies this objective standard . . . to protect consumers against deceptive debt collection practices and to protect debt collectors from unreasonable constructions of their communications." Green v. Douglas, Knight & Assocs. (In re Cheaves), 439 B.R. 220 (Bankr. M.D. Fla. 2010).

36.    The least sophisticated consumer standard is similarly applied in determining violations of the FCCPA. *See, e.g.,* Michael v. HOVG, LLC, 2017 WL 129111, at \*5 (S.D. Fla. Jan. 10, 2017) (finding that Plaintiff successfully stated a claim for under Fla. Stat. Ann. § 559.72(9) because "the least sophisticated consumer may plausibly believe that the [collection letter] 'threaten[s] to enforce a debt' or 'assert[s] the existence of some other legal right.'"); Bank v. Schmidt, 124 So. 3d 1039 (Fla. Dist. Ct. App. 2013) (affirming class certification which the lower court premised on least sophisticated consumer standard governing the FCCPA); Green, 439 B.R. 220 (discussing the similar goals of the FCCPA and FDCPA and applying the least-sophisticated consumer standard to determine whether a collection letter violated the FCCPA).

## III.    ESTABLISHING A CLAIM FOR FDCPA AND/OR FCCPA VIOLATIONS

37.    The FDCPA and FCCPA "have certain parallels, as both relate to consumer protection against creditors, and include nearly identical definitions of 'communication,' 'debt,' and 'debt collector.' Kinlock v. Wells Fargo Bank, N.A., 636 Fed. Appx. 785, 787 (11th Cir. 2016) (citations omitted). Thus, to establish a claim under the FDCPA and FCCPA are largely the same.

38.    To establish a claim under the FDCPA, the plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt

collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Pescatrice v. Orovitz, P.A., 539 F.Supp.2d 1375, 1378 (S.D.Fla.2008).

39.     Unsurprisingly, "[t]he elements necessary to plead a claim under the FCCPA are similar but distinguishable from the elements of establishing a claim under the FDCPA." Deutsche Bank Nat. Trust Co. v. Foxx, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013). "The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt [and] [t]he second prong [only] differs from the FDCPA in that the FCCPA prohibits acts of 'persons' and, accordingly, is not limited to 'debt collectors.'" Bacelli v. MFP, Inc., 729 F.Supp.2d 1328, 1335 (M.D.Fla.2010). "The third prong requires an act or omission prohibited by the FCCPA. In addition to these elements, several subsections of §559.72 require an allegation of knowledge or intent by the defendant in order to state a cause of action." Foxx, 971 F. Supp. 2d 1106, 1114 (citing Reese v. JPMorgan Chase & Co., 686 F.Supp.2d 1291, 1309 (S.D.Fla.2009) ("To plead a FCCPA claim, a party must allege knowledge or intent by the debt collector in order to state a cause of action.")).

**COUNT I.**
**VIOLATION OF THE FDCPA**

40.     Plaintiff incorporates by reference paragraphs 22-39 of this Complaint as though fully stated herein.

41.     As a result of Defendant's forgoing FDCPA violations, Plaintiff has suffered actual damages, including but not limited to mental suffering, anguish, loss of income, and personal and/or financial credibility, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

***VIOLATION OF THE FDCPA – No. 1***

42.    Defendant violated §1692e(10) of the FDCPA by utilizing false representations and/or deceptive means in an attempt to collect the Consumer Debt and/or obtain information concerning Plaintiff. In short, Defendant wrongfully mislead the least sophisticated consumer into believing he or she was protected and/or entitled to certain rights and/or protections, at law, when, in reality, the consumer was not.

43.    On the front of the Collection Letter, Defendant directs and/or advises all consumers, without limitation, to read the back of the Collection Letter because it contains important information. *See* <u>Collection Letter</u>. ("**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**." (emphasis in original)). It is without question that Defendant's advisory to "*see reverse side for important information*" causes the least sophisticated consumer to believe that the information on the back of the letter is, *in fact*, important for the consumer to know, without reservation or exception.

44.    On the reverse side of the Collection Letter, Defendant lists a series of rights and/or laws as applying to residents of certain states. For example, Defendant states, in relevant part: "California**:** *. . . except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. [Debt collectors] may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.*" *See* <u>Collection Letter</u> (emphasis added).

45.    Regardless of whether the rights Defendant articulates for residents of California *is* true for residents of California, these rights are *true* for residents of Florida. Yet, despite advising Plaintiff to *read the back of the letter because it contains important information*, Defendant did

not inform Plaintiff that residents of Florida are *also guaranteed the very same rights* (to wit, those rights referenced in the preceding paragraph).

46.     By and through the Collection Letter, Defendant unlawfully deceives the consumer in two ways – *first*, the least sophisticated consumer is told that the information on the back of the Collection Letter is "important" – and *second* – the so-called "important" information Defendant directed to least sophisticated consumer's attention limited to a series of rights and/or protections that are exclusive to residents of *other states*. Yet, the deception caused by the sum of these aspects of the Collection Letter are utterly dwarfed by the harmonious deception caused by such aspects as a whole.

47.     Most notably, by and through the Collection Letter's language, the consumer is lead to believe an erroneous negative implication, to wit, that he or she is ***not protected*** by any of the rights and/or protections Defendant articulates on the back of the Collection Letter. This is, of course, the only logical conclusion of the Collection Letter's language – i.e. – the consumer is advised that the rights depicted on the back of the Collection Letter, all of which was limited explicitly limited to *NON-FLORIDA RESIDENTS*, is *IMPORTANT INFORMATION* for the consumer to know.  *See* Melillo v. Shendell & Assocs., P.A., 2012 WL 253205, at *6 (S.D. Fla.) ("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." (quoting Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1062 (9th Cir. 2011)) (internal quotation marks omitted)); *See, e.g.*, Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1369 (M.D. Fla. 2002) (a collection letter which stated that "the consumer would incur 'substantial amounts of attorney fees and costs'" if a law suit was filed "is a false representation and misleading to the least sophisticated consumer" because such an outcome is not certain to occur).

48.     Furthermore, due to Defendant's decision to *include* irrelevant state specific discourses and *exclude* an adequate explanation for Florida residents, the least sophisticated consumer is just as likely to believe the opposite – to wit – that the consumer ***is protected*** by all or some of the rights and/or protections needlessly disclosed in the Collection Letter because the least sophisticated consumer is not capable of realizing what is required for the consumer to qualify for such protections and/or rights. *See also* <u>Gonzales</u>, 660 F.3d 1055 at 1063 ("[c]onditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability.").

*VIOLATION OF THE FDCPA – No. 2*

49.     Defendant violated §1692f(8) of the FDCPA by using a symbol, other than the debt collector's address, on the envelope used to communicate with Plaintiff by mail. Defendant, by and through the Collection Letter, sought to collect the Consumer Debt from Plaintiff. In short, the envelope used to mail the Collection Letter displayed a Quick Response ("QR") code through the transparent window of the envelope. Such QR code is located on the upper left-hand portion of the Collection Letter.

50.     Under the same facts as the instant case (differing only by the fact that, the instant case involves a QR code) the court in <u>Palmer v. Credit Collection Servs.</u> explicitly articulates why Defendant violated the FDCPA by displaying bar code through the transparent window of the envelope which contained the Collection Letter:

> [Section] 1692f(8) [of the FDCPA] … forbids the debt collector from "[u]sing any language or symbol" on the envelope sent to a consumer to collect a debt. The bar code, of course, is a symbol. Thus, it is undeniable that §1692f(8) forbids the appearance of the bar code through the transparent window of the envelope sent to the debtor. We must apply the statute as written unless, as our Court of Appeals directs, the result would be absurd. *See* <u>Id</u>. at 302-03. An oft-cited example of absurdity in this context would be to read the

statute to disallow the debt collector from affixing a stamp to the envelope. *See* Id. at 303.

Congress, for example, could have described or attempted to describe in §1692f(8) what specific language or symbols would or would not have been inimical to the purposes of the FDCPA. Instead, Congress decided to impose a blanket prohibition against any language or symbol on the envelope except for the return address of the debt collector and its name "if such name does not indicate that [it] is in the debt collection business." *See* §1692f(8). This approach provides certainty to debt collectors and avoids the problem of having to decide on a case by case basis what language or symbols intrude into the privacy of the debtor or otherwise constitute "an unfair or unconscionable means to collect or attempt to collect a debt." *See* §1692f. Congress wrote into the law a bright-line rule with respect to markings on envelopes sent to debtors and authorized the award of damages to debtors if debt collectors violate the plain language of §1692f(8).

We cannot say that what Congress has done leads to an absurd result in this case. The bar code in issue is designed to apply specifically to the plaintiff and relates to the debt she allegedly owes. Contrary to the focus of the parties' arguments, it is irrelevant whether the bar code, when scanned, reveals a scrambled or unscrambled number. Again, §1692f(8) plainly forbids bar codes of any kind.

160 F. Supp. 3d 819, 822-23 (E.D. Pa. 2015); *see also* Michael v. Hovg, 2017 WL 129111, at *3-4 (S.D. Fla. Jan. 10, 2017) (rejecting the argument that a bar code or Quick Response code visible from the exterior of a collection letter's unopened envelope needs to reveal information relating to the consumer and/or the underlying debt, noting that "the Eleventh Circuit has not yet entered the fray, but even assuming the 'benign language' exception applicable, the Court [was] unwilling to create an additional pleading requirement that Plaintiff must overcome to state a claim under § 1692f(8)." (citing Palmer, 160 F. Supp. 3d 819 at 823 ("The bar code in issue is designed to apply specifically to the plaintiff and relates to the debt she allegedly owes. Contrary to the focus of the parties' arguments, it is irrelevant whether the bar code, when scanned, reveals a scrambled or unscrambled number." (footnote omitted))).

### *VIOLATION OF THE FDCPA – No. 3*

51.     Defendant, through its agent, violated §§ 1692e, 1692f and 1692g of the FDCPA by utilizing false, deceptive, misleading, unfair or unconscionable representations and/or means in an attempt to collect the Consumer Debt. Furthermore, Defendant, through its agent, misrepresented and overshadowed Plaintiff's rights.

52.     Plaintiff received the Collection Letter on or about October 4, 2017.  As shown in the Collection Letter, Defendant provided Plaintiff with a copy of her 30-day dispute and validation rights as required to do so under §1692g.

53.     Consumers are given certain protections during the 30-day dispute and validation period.  "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C § 1692g(b).

54.     Here, Defendant overshadowed Plaintiff's right to dispute the debt by conditioning her ability to dispute the Consumer Debt on Plaintiff's cooperation in providing Defendant with proof of payment of the debt.   Such condition is contrary and inconsistent to the dispute rights granted to Plaintiff under §1692g.  Every court in our circuit agrees that statements that contradict Plaintiff's rights under §1692g(a) violates §1692g(b).

55.     Additionally, a dispute need not be in writing and sent to Defendant, as Defendant misleads Plaintiff to believe. A valid dispute can be accomplished verbally. 15 U.S.C § 1692g(a)(3).  By stating that the dispute would have to be in writing, Defendant, again violated §§ 1692g(a) and 1692g(b).

56.     Furthermore, the overshadowing statements and misrepresentations described above also violate § 1692e and § 1692f of the FDCPA as the representations were misleading false, deceptive, unfair and unconscionable.

## COUNT II.
## VIOLATION OF THE FCCPA

57.     Plaintiff incorporates by reference paragraphs 22-37 of this Complaint as though fully stated herein.

58.     As a result of Defendant's forgoing FCCPA violations, Plaintiff has suffered actual damages, including but not limited to mental suffering, anguish, loss of income, and personal and/or financial credibility, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

### *VIOLATION OF THE FCCPA – No. 1*

59.     Defendant violated Fla. Stat.  §559.72(9) and §559.72(7) by attempting to collect a debt and/or assert a legal right it knew to be illegitimate and/or otherwise unlawful.

60.     As set forth in more detail above, at the time Defendant's spoke to Plaintiff, Defendant knew, through knowledge of applicable statutes and regulations, that Defendant's verbal statements made to Plaintiff with regards to disputing the debt, as described above, were false.

61.     The conduct complained of by Plaintiff could be reasonably viewed as abusive or harassing.

62.     As a result of Defendant's aforementioned FCCPA violation, Plaintiff has suffered actual damages, including but not limited to, loss of income, and personal and/or financial credibility, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

***VIOLATION OF THE FCCPA – No. 2***

63.   Defendant violated Fla. Stat. §559.72(9) by attempting to collect a debt and/or assert a legal right it knew to be illegitimate and/or otherwise unlawful.

64.   As set forth in more detail above, the Consumer Debt is a debt governed by the FDCPA, and thus, to lawfully seek the collection of the Consumer Debt, Defendant must comply with the FDCPA – in particular – section 1692f(8). Defendant knowing engaged in unlawful conduct in attempting to collect the Consumer Debt from Plaintiff, to wit, Defendant unlawfully displayed a QR Code on the envelope Defendant used to mail the Collection Letter in violation of §1692f(8) of the FDCPA. Accordingly, because full compliance with the FDCPA is necessary for Defendant to maintain lawful collection authority of applicable debt, Defendant knowingly sought the unlawful collection of the Consumer Debt from Plaintiff. Kaplan v. Assetcare, Inc., 88 F.Supp.2d 1355, 1363 (S.D. Fla. 2000) (in determining what constitutes a misrepresentation of a legal right under §559.72(9) of the FCCPA, the court "must refer to other statutes that establish the legitimacy of a debt and define legal rights.").

## **DEMAND FOR JURY TRIAL**

65.   Plaintiff respectfully demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant, awarding Plaintiff the following relief:

(a)   Statutory and actual damages, as provided under 15 U.S.C. §1692k, for the FDCPA violations committed by Defendant in attempting to collect the Consumer Debt.

(b)   Statutory and actual damages, as provided under Fla. Stat. §559.77(2), for the FCCPA violations committed by Defendant in attempting to collect the Consumer Debt from Plaintiff.

(c)     An injunction prohibiting Defendant from engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA;

(d)     Costs and reasonable attorneys' fees as provided by both 15 U.S.C. §1692k and Fla. Stat. §559.77(2); and

(e)     Any other relief that this Court deems appropriate and just under the circumstances.

DATED: December 3, 2017

Respectfully Submitted,

 /s/ Jibrael S. Hindi                                    .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:     jibrael@jibraellaw.com
THE LAW OFFICES OF JIBRAEL S. HINDI
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:     954-907-1136
Fax:        855-529-9540


*COUNSEL FOR PLAINTIFF*